WINFREY
vs
WILLIAMS' EX-
ECUTORS, &c.

---

CHANCERY.

Case 97.

June 9.

The case stated.

## Winfrey *vs* Williams' Executors, &c.

ERROR TO THE ADAIR CIRCUIT.

*Mortgages.   Equities of redemption.*

JUDGE BRECK delivered the opinion of the Court.

IN August, 1837, Warner W. Williams mortgaged a house and lot, several slaves, and other property, to his father, Daniel Williams, John E. Atkinson, Josiah Williams, William P. Williams and Randolph Robertson,

to secure certain debts, and indemnify the mortgagees, as his sureties in certain liabilities therein specified.

In June, 1839, the mortgagor and his father sold, and united in a bill of sale for three of the mortgaged slaves, to one Sutherland, for the consideration of $2,100.

In May, 1840, Winfrey, the appellant, purchased, under execution, the other two slaves, the house and lot, and some personal property, embraced in and sold subject to the mortgage. Shortly afterwards, the mortgagees exhibited their bill in Chancery for a foreclosure of the mortgage. Warner W. Williams, the mortgagor, and Winfrey, were made defendants, the latter of whom answered, making his answer a cross bill against the complainants and his co-defendant, setting up his purchase under execution, and alledging that the mortgage was fraudulent, made for the purpose of hindering and delaying creditors ; that the debts which it purported to secure to the mortgagees, were pretended, and without consideration, and that they had been discharged from their alledged liabilities for the mortgagor. But in the event the mortgage should be deemed valid, he prays that he may be permitted to redeem, by paying the ballance, which, if any, may be found due the mortgagees. The allegation of the cross bill, that the mortgage was fraudulent; that the debts secured therein had been paid, and the liabilities of the mortgagees discharged, are denied in their answers.

During the progress of the cause, Daniel Williams having died, the suit was revived in the name of his executors.

The Court below on final hearing, decreed a sale of all the mortgaged property, except the three slaves sold to Sutherland, and the two purchased by Winfrey, first to pay the mortgagees, other than the executors of Daniel Williams, the sums respectively found due them, and the residue, if any, to be applied in payment of the amount due said executors, as specified in the decree.

The decree further directs, that in the event the property decreed to be sold should be insufficient to discharge the sums respectively decreed the mortgagees, other than the executors of D. Williams, the two slaves purchased

by Winfrey, if necessary to pay such ballance, should also be sold. And if all the property thus directed to be sold, should be insufficient to pay the debts of the mortgagees thus preferred, the whole proceeds were to be applied rateably between them.

To reverse that decree, Winfrey prosecutes this writ of error. The executors of D. Williams also object to the decree, and have assigned cross errors.

Questions for decision in this Court.

The first question presented for consideration on the part of Winfrey is: that the proper parties were not before the Court; that Sutherland, the purchaser of the three slaves, was a necessary party.

A purchaser from one of several mortgagees and the mortgagor of a part of the property mortgaged, acquires the title of each, and a purchaser of the equity of redemption subsequently in the residue of the property, cannot complain unless for fraud as a creditor.

Sutherland acquired by his purchase, all the title and interest of W. Williams, and also of Daniel Williams, and if the purchase was fair and for a valuable consideration, as it appears to have been, his title was good against all the world, except the other mortgagees. If made without their consent, their rights under the mortgage, would of course not be affected by it. They do not complain of the sale, nor seek to subject those slaves to the payment of their respective claims. In order to subject the residue of the mortgaged property, it was not necessary that he should be made a party. D. Williams had parted with his interest, and the other mortgagees had not only a right, but were equitably bound to exhaust the residue of the mortgaged property, before resorting to the slaves thus purchased by Sutherland. Whether, therefore, he was or not a party, was a matter of no importance to Winfrey. If the residue of the property was sufficient to discharge the mortgage claims, the three slaves vested absolutely in Sutherland, and if it was not, they would, in no event, be liable except for the deficiency.

2d. It is contended that the mortgage was fraudulent. Upon this question, it need only be remarked, that Winfrey, as a purchaser subject to the mortgage, had no right to assail it on that ground; and as a creditor, he seems not to have attempted it. But even if he had, we are of opinion he has failed in the effort. The allegations of fraud are not sustained by the testimony.

3d. It is urged that Daniel Williams having united in the sale of the three slaves, his lien upon the residue of

the mortgaged property, should thereby be regarded as extinguished. And if not, that the other mortgagees, not having joined in the sale, should be compelled to resort to those slaves for a proportionable amount of their claims. There might be some plausibility in the last position, if we could overlook the rights of Sutherland, whose equity, as we have seen, is elder and superior to that of Winfrey; but this question has already been disposed of. We are also of opinion, that the first position is untenable. As between D. Williams or his executors, and the other mortgagees, the latter were entitled to have their claims secured by the mortgage, discharged out of the residue of the mortgaged property, before the former should come in, as said testator had united in the sale of the three slaves, the proceeds of which exceeded the whole amount of his lien under the mortgage. It is true it does not appear that he received any portion of the proceeds, but he joined the mortgagor in making an absolute, unconditional sale, and in a warranty of the title. The purchaser would, therefore, have an equitable right to exclude him from any participation in the proceeds of the residue of the mortgaged property, till the claims of the other mortgagees were satisfied. Besides, by rendering himself thus responsible for the title, it could make no difference with him, whether the other mortgagees, who do not appear to have joined in or consented to the sale, or received any portion of the proceeds, had their claims discharged out of the other mortgaged property, or resorted to the three slaves, as in the latter case he would be responsible to the purchaser. But notwithstanding the other mortgagees could exclude the executors of D. Williams from any participation in the proceeds of the other property till their claims were satisfied, yet we do not perceive upon what principle Winfrey could exclude them, either before or after the other mortgagees were satisfied. As D. Williams received nothing from the sale of the three slaves, his lien upon the residue of the mortgaged property as against the mortgagor, would not be thereby affected. Nor would it be impaired or affected by the purchase of Winfrey, which was not made till long after the three slaves were sold. The release of a por-

tion of the mortgaged property would not certainly destroy the lien upon the residue. It seems to us, therefore, that Winfrey acquired by his purchase no interest in any of the mortgaged property, except subject to the just claims of all the mortgagees, including D. Williams or his executors.

4th. It is contended that the Court below erred in not permitting Winfrey to file an amendment to his cross bill, in which he alledges that under the will of D. Williams, his executors have no right to subject the mortgaged property to the payment of the surety debts, inasmuch as they have been made by the payment thereof, by said testator and his executors, the debts of the estate against Warner Williams, and under the will, are thereby discharged. The amendment refers to the will, which was then on file in the suit. The will bears date in March, 1841, and contains this provision: "It is my will and desire, that my son Warner W. Williams shall have ten dollars in cash. He has already received, and will, when I pay the debts for which I stand bound as his security, more than his equal share of all my estate." In a subsequent clause, the testator directs all his estate, not specifically disposed of by the will, to be equally divided among all his children, except his son Warner.

In April, 1841, the testator annexes a codicil to his will, by which he provides, that in the event his son Warner should pay the debts, for which he then stood bound for him, he should have an equal part with the rest of his children in all his property, not disposed of in the previous part of his will. As explanatory of this provision, the testator says, "I have named in my will that my son Warner had received his full part of my estate, or would when I paid some security debts which I now stand bound for him." What amount was paid by the testator, as surety for his son, after the date of the codicil, does not very clearly appear. It however appears that considerable sums have been paid by his executors. The decree is for the executors for the whole amount paid by them or their testator upon his liabilities, provided for in the mortgage.

It does not appear that the testator incurred any new liabilities for the son, after the execution of his will, nor that any of his existing liabilities at that time, have been subsequently discharged by his son.

The testator does not in express terms say that he designed paying the debts for which he was then bound for his son; but the inference seems to be authorized, that he anticipated being compelled to pay them, and that it was his intention that the sums when paid, with what his son had already received, should constitute his portion of his estate.

Upon this construction of the will, and upon the facts as they now appear in the record, we are inclined to the opinion, that the executors were entitled to no portion of the proceeds of the mortgaged property. But without intending the opinion thus intimated, to be conclusive upon the parties, we think the Circuit Judge erred in not permitting Winfrey to file his amended cross bill, so that his claims, considered in reference to the will, might be presented and litigated with the executors and W. Williams. Winfrey alledges, and it appears that besides his purchase under execution, he was a creditor of Warner Williams, having paid large sums for him as surety.

How far it may be proper to take into consideration his claims as a creditor, in the equitable adjustment of his purchase under execution, and of the controversy with the executors and Warner Williams, in regard to the mortgage and the will, cannot now be determined. It will, of course, depend upon the state of case that may be presented by additional pleadings and facts. We only intend to decide, that from the record as it now stands, he should have been permitted to file the proposed amendment.

5th. The decree is erroneous in decreeing too much to the mortgagee, Robertson.

There is decreed to him $350, with interest from the 4th December, 1836. This was the amount of the note secured by the mortgage. Robertson admits in his answer, a payment of $96, in a sorrel mare, paid 5th Oct. 1839, and which is also credited upon the note.

WINFREY
vs
WILLIAMS' EX-
ECUTORS, &c.

A purchaser of an equity of redemption, in case of a decree *nisi*, who asks the privilege to do so, should have the privilege to redeem extended to him by the decree—though he has the right to do so,—or upon bringing the money into Court, no sale should be made.

There is decreed to Atkinson $100, with interest from the 2d June, 1837. We are not satisfied that he was entitled to that much. After discharging the note for $350, for which he was surety, out of the proceeds of the note, which he received upon Little & Co., there was left a small ballance, which should have been applied upon the $100 note.

. It is also contended that the decree is erroneous in not providing that Winfrey might redeem the mortgaged property, by paying the several sums decreed the mortgagees. As Winfrey prayed to be permitted to redeem, it would have been proper to have extended to him that privilege in the decree *nisi*. But he had the right without a decree; and upon the fact appearing that he had paid the mortgagees the sums respectively decreed them, or if he had brought the money into Court, the Court would not, of course, have decreed a sale, but have shaped a final decree accordingly.

*A father took a mortgage on the property of the son to secure him against certain liabilities as surety for the son, & died, providing that his son receive only $10 of his estate, he having paid and being bound as his surety for a sum equal to his part of his estate, but if he paid the debts for which he was bound, then he was to have an equal share with the other children. Was not that in effect a release of the claim for indemnity under the mortgage.—Qu.*

Upon the cross errors of the executors, it is contended that they are entitled to a much larger sum than is decreed them. We are not satisfied, that in that respect there is any error in the decree.

As to the other questions raised upon the cross errors, they have been disposed of in the general view which we have taken of the case, and need not be further noticed.

In conclusion, we are of opinion, that all the mortgaged property, with the exception of the three slaves sold Sutherland, was subject to the payment of the claims of the mortgagees, Atkinson, Robertson, Josiah and W. P. Williams, and the Circuit Judge was right in decreeing a sale of so much thereof as might be necessary for that purpose. It was not necessary to delay a decree and sale to that extent, till the controversy between Winfrey and the executors of D. Williams and Warner Williams could be finally disposed of. That the decree, however, as suggested, is in that respect erroneous in reference to the amount decreed Robertson, and also Atkinson.

We are also of opinion, that the Court erred in refusing Winfrey permission to file his amended cross bill.

Wherefore, the decree is reversed, and the cause remanded for further proceedings.

*B. & A. Monroe and Morehead & Reed* for plaintiff: *Harlan & Craddock* for defendants.